**KRONENBERGER BURGOYNE, LLP**
Karl S. Kronenberger (Bar No. 226112)
Henry M. Burgoyne, III (Bar No. 203748)
Deepa Krishnan (Bar No. 228664)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone:  (415) 955-1155
Facsimile:   (415) 955-1158

Attorneys for Plaintiff
SECOND IMAGE, INC.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SECOND IMAGE, INC.**, a California corporation,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>**RONSIN PHOTOCOPY, Inc.,** a California Corporation; **CHRISTINA SANCHEZ**, an individual; and **DOES 1-10**,<br><br>　　　　Defendants. | Case No. C-075242 PJH<br><br>**PLAINTIFF SECOND IMAGE, INC.'S OPPOSITION TO DEFENDANT RONSIN PHOTOCOPY, INC.'S MOTION TO DISMISS FOR IMPROPER VENUE, FAILURE TO STATE A CLAIM, AND LACK OF SUBJECT MATTER JURISDICTION; OPPOSITION TO ALTERNATIVE MOTION TO TRANSFER FOR IMPROPER VENUE OR CONVENIENCE;**<br><br>[Declarations of Norman Fogwell and Karl Kronenberger in Support Thereof Filed Concurrently Herewith]<br><br>Date: December 19, 2007<br>Time: 9:00 a.m.<br>Dept.: 3<br><br>**The Honorable Phyllis J. Hamilton** |

# TABLE OF CONTENTS

I. INTRODUCTION .......................................................................................................... 1

II. STATEMENT OF FACTS ............................................................................................ 2

    A.   Defendant's Statewide Business ...................................................................... 2

    B.   Defendant's Business in Northern California ................................................... 2

    C.   Defendant's Unlawful Activities vis-à-vis Plaintiff ............................................. 3

III. LEGAL DISCUSSION .................................................................................................. 4

    A.   Venue is Proper in this Court as Ronsin is a Corporate
Defendant Residing in the Northern District of California ............................... 4

    B.   Venue is Appropriate in this District and
Ronsin Has Not Demonstrated That This
Action Should be Transferred for Convenience .............................................. 6

    C.   Ronsin Hacked into Plaintiff's Computer System in Violation of the CFAA ..... 9

    D.   The Complaint Contains an Adequate Description of Defendant's
False Statements Made to Pursue Plaintiff's Customers ............................... 11

IV. CONCLUSION ........................................................................................................... 13

# TABLE OF AUTHORITIES

**Statutes and Treatises:**

*Cal. Business and Professions Code § 22450 et seq.* ................................................... 5

*Weil & Brown, California Practice Guide: Fed. Civil Procedure Before Trial*, § 4:730 .. 7-8

28 U.S.C. § 1391(b) ........................................................................................................ 4

28 U.S.C. § 1404(a) ........................................................................................................ 6

**Cases:**

Avid Identification Systems, Inc. v. Schering-Plough Corp. (9th Cir. March 25, 2002)
    2002 WL 464714 ..................................................................................................... 13

Bancroft & Master, Inc. v. August Nat'l Inc (9th Cir. 2000)
    223 F. 3d 1082 ......................................................................................................... 6

Coastal Abstract Service, Inc. v. First American Title Ins. Co. (9th Cir. 1999)
    173 F.3d 725 ........................................................................................................... 13

Decker Coal Co. v. Commonwealth Edison Co. (9th Cir. 1986)
    805 F.2d 834 ............................................................................................................ 7

EF Cultural Travel BV v. Explorica, Inc. (1st Cir. 2001)
    274 F.3d 577 ........................................................................................................... 10

Fireman's Fund Ins. Co. v. Nat. Bank of Coops (9th Cir. 1996)
    103 F. 3d 888 ........................................................................................................... 4

Gulf Oil Corp. v. Gilbert (1947)
    330 U.S. 501 ............................................................................................................ 7

Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd. (9th Cir. 2003)
    328 F. 3d 1122 ......................................................................................................... 5

I.M.S. Inquiry Management Systems, Ltd. v. Berkshire Information Systems, Inc.,
    (S.D.N.Y. 2004) 307 F. Supp. 2d 521, 525 ............................................................ 11

International Airport Centers, L.L.C. v. Citrin (7th Cir. 2006)
    440 F.3d 418 ........................................................................................................... 10

International Shoe Co. v. Washington (1945)
    326 U.S. 310 ............................................................................................................ 5

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

Piper Aircraft Co. v. Reyno (1981)
    454 U.S. 235 ............................................................................................................ 7

Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc. (W.D. Wash. 2000)
    119 F. Supp. 2d 1121 ............................................................................................ 11

Tuazon v. R.J. Reynolds Tobacco Co. (9th Cir. 2006)
    433 F.3d 1163 ........................................................................................................ 6

U.S. v. Sablan (9th Cir. 1996)
    92 F.3d 865 .......................................................................................................... 10

U.S. v. Willis (10th Cir. 2007)
    476 F.3d 1121 ...................................................................................................... 10

# I.

# **INTRODUCTION**

Defendant Ronsin Photocopy, Inc. ("Defendant") attempts to brush off Plaintiff Second Image, Inc. ("Second Image")'s complaint as a petty business dispute between two Southern California competitors.  In fact, it is an example of online industrial espionage whose primary effects have been felt here in the Northern District, and whose facts are so compelling as to attract the attention of law enforcement.

With lip service to the appropriate legal tests and even less attention to the facts, Defendant argues that venue is improper because Defendant's only connection to Northern California is a "field representative office."  In fact, Defendant and its parent's recent merger partner have no less than four Northern District offices through which Defendant – 40% of whose employees work other than in its Southern California office – administers its primary business activities (i.e., the copying of documents and service of subpoenas).  Most importantly, and as Defendant knows, the primary harm caused by Defendant's invasion of Second Image's systems, and all identified third-party witnesses, are located here in Northern California.  Defendant is a self-proclaimed "statewide" legal services business that advertises and is registered to conduct business in Northern California, and whose attempts to lure one of Second Image's Northern California customers exposed Defendant's wrongdoing.  Defendant cannot credibly claim Northern California to be an improper or inconvenient forum.

Plaintiff's arguments in favor of its motion to dismiss fare little better.  As explained herein, caselaw regarding the Computer Fraud and Abuse Act makes clear that Second Image's allegations concerning the scope of Defendant's access to Second Image's systems and the harms caused by that access are more than sufficient to withstand a motion to dismiss.  Equally sufficient are Second Image's Lanham Act allegations concerning certain of Defendant's false statements – such statements having been made covertly with the hopes that Second Image never learn

Case No. C-075242 PJH                                1                    **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

of them. For those reasons and others articulated herein, the Court should deny Defendant's motion in its entirety.

## II.

## STATEMENT OF FACTS

### A. Defendant's Statewide Business

Defendant Ronsin Photocopy, Inc. ("Defendant") is a California corporation with its corporate headquarters in California. (Complaint, ¶ 3.) Defendant is part of the unregistered "Ronsin Group", which has merged, in part, with an entity known as "Rapid Legal" in 2004. (Declaration of Karl S. Kronenberger ("Kronenberger Decl."), Exh. B.) Defendant, though headquartered in Los Angeles County, has branch offices throughout California, including in Alameda County. (Id.) Rapid Legal has branches throughout California, including in Hayward, San Francisco, San Jose, and Sacramento. (Id., ¶ 5.) At least sixty percent of Defendant's employees work outside the corporate headquarters, presumably in branches like that in Alameda County. (Id., Exh. C.)

### B. Defendant's Business in Northern California

Defendant is "a multidimensional litigation support services company" providing "document reproduction" and "a full line of statewide Attorney Services and Document Imaging." (Kronenberger Decl., Exh. B.) On its website, Defendant states that it offers "services statewide." It claims to have done so for over ten years, since the opening of its "first office in Northern California…in 1994." (Id.) According to Defendant, it "has more than a dozen offices throughout California; as far north as Chico and as far south as San Diego." (Id.).

Defendant is licensed as a Registered Professional Photocopier in Alameda County. (Kronenberger Decl., ¶ 7.) On its website, Defendant describes its business as providing three main services: Subpoena Preparation, Document Photocopying and Production, and Record Retrieval. (Kronenberger Decl., Exh. B). Defendant's branch

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

offices, including its Alameda County office, all seemingly provide the same services as its corporate headquarters. (Kronenberger Decl., Exh. C.). To that end, Defendant has recently posted a job listing on Craigslist, seeking to hire "a field representative for the Peninsula and San Francisco area", stating that a "field representative's daily job duties include routing work orders, and copying legal documents throughout the Bay Area (primarily the city and peninsula) with our portable copy machines. You will be required to start and end your day in our Hayward office during the initial training period." (Kronenberger Decl., Exh. A.)

### C.    Defendant's Unlawful Activities vis-à-vis Second Image

Plaintiff Second Image, Inc. ("Second Image") handles highly confidential documents, including subpoenaed medical records, which are available only to authorized parties. Because many of Second Image's services are Web-based, it takes great measures to ensure that all information and documents available on its website, http://www.secondimage.com, are secure. (Complaint, ¶ 13.) One such protection is the use of dedicated usernames and passwords for its clients. (Complaint, ¶ 14.)

On or about January 19, 2005, Defendant Christina Sanchez, a paralegal at the Law Offices of Neal, Haushalter, Ray & Kurkhill (the "Law Firm"), signed up for Second Image's services. In response, Sanchez received two confirmation emails. The first email informed her that her request to open an online account had been received and that for confidentiality and safety reasons the account would take one business day to configure. A second subsequent email provided her with a username and password. Both emails stated that the information contained therein is confidential. (Complaint, ¶ 18.)

On or about May 31, 2007, Second Image was contacted by its client located in Oakland, Kaiser Permanente ("Kaiser"), indicating they had been informed of a potential breach of the Second Image website. (See Complaint, ¶ 19.) Second

Image, via its President, spoke with Kaiser's senior legal counsel based in Oakland, Mary Parks, who stated that a "Tom" from Ronsin had contacted Kaiser to warn that Second Image's website was not secure. (Declaration of Norman Fogwell ("Fogwell Decl."), ¶ 4.) Tom also gave Kaiser instructions on how to duplicate the results so that Kaiser could breach the site if it wanted to do so. (Id.) Kaiser became concerned that its records related to a pending class action suit, on which Second Image was working in the Northern District, had been breached. As a result of its conversation with Kaiser, Second Image audited its database and discovered that its security had been breached. The breach was solely associated with the login account of Defendant Christina Sanchez. (Id., ¶ 5.) Second Image promptly notified Kaiser that some of its records were involved in the breach. (Id.)

Kaiser is one of Second Image's largest clients. (Id., ¶ 6.) At the time Defendant provided its purported "demonstration" to Kaiser, Second Image was utilizing nineteen of its employees and field representatives to photocopy records and images in Kaiser's facilities in San Francisco and Oakland. (Id.) Law enforcement is actively investigating the breach into Second Image's system. (Id., ¶ 7.)

### III.

### **LEGAL DISCUSSION**

A. **Venue is Proper in this Court as Ronsin is a Corporate Defendant Residing in the Northern District of California.**

In an action not founded solely on diversity, such as here, venue is proper "in a judicial district where any defendant resides, if all defendants reside in the same State." 28 U.S.C. § 1391(b). For purposes of the venue statute, a corporate defendant, such as Ronsin, resides "in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." Personal jurisdiction, in turn, is proper if it is permitted by a long-arm statute and the exercise of that jurisdiction does not violate federal due process. Fireman's Fund Ins. Co. v. Nat. Bank of Coops, 103 F. 3d 888,

893 (9th Cir. 1996). California's long arm statute is coextensive with federal due process requirements. See Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F. 3d 1122, 1129 (9th Cir. 2003). Jurisdiction is thus proper where a defendant has engaged in minimum contacts with the forum, and where the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

Without setting forth the above standard, nor moving to dismiss for lack of personal jurisdiction, Defendant concludes that "its abundantly clear that Defendant Ronsin would not be subject to personal jurisdiction in Northern California." (Motion at 4.) In fact, it is not clear at all. Defendant itself concedes that it engages in the "serving of subpoenas and the copying of records on site for Northern California locations". (Id.) Defendant further states that it has a "field representative office" in Northern California. (Id.) Those contacts alone are sufficient for personal jurisdiction and, as a result, venue.

More availing still are the litany of venue-related facts that Defendant withholds. Defendant is a California corporation which continuously and systematically targets customers throughout the state of California. (Kronenberger Decl., Exh. B.) Defendant's website repeatedly describes its "statewide" presence and claims to service customers via offices throughout the state "from Chico to San Diego." Additionally, Defendant is listed in the yellow pages for Northern California, with offices in Sacramento and Hayward. (Id., Exh. A.) Furthermore, Defendant is a registered professional photocopier under Cal. Business and Professions Code § 22450 *et seq.*, and therefore holds licenses, and posts bonds in this District. (Kronenberger Decl., ¶ D; Cal. Business and Professions Code § 22450 *et seq.*) Likewise, Rapid Legal has offices in Hayward, San Francisco, San Jose, and Sacramento. (Id., ¶ 5.) "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of

process, holds a license, or is incorporated there." Bancroft & Master, Inc. v. August Nat'l Inc., 223 F. 3d 1082, 1086 (9th Cir. 2000).   Such factors are all present here.

Perhaps most importantly, the harm alleged in the Complaint occurred, at least in large part, in the Northern District, where Second Image's client, Kaiser, is located, and where Second Image was working on a large action for Kaiser.  While discovery will likely reveal further clients and potential clients throughout California who were contacted by Defendant regarding the purported security breach (initiated by Defendant itself), Second Image only became aware of Defendant's unlawful actions from Kaiser in Northern California, and Defendant's actions threatened Second Image's existing business relationship on a pending matter with Kaiser in the Northern District.

Defendant has not suggested or stated that the exercise of jurisdiction would offend traditional notions of fair play and substantial justice.  Indeed, a "plaintiff's choice of forum will not be disturbed unless defendants can make a clear and convincing showing that venue should be changed," (Lisseveld v. Marcus, 173 F.R.D. 689, 700 (M.D. Fla. 1997)).  Defendant has fallen far short of that hefty burden.  Thus, venue here is proper.  See e.g., Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1174 (9th Cir. 2006) ("The magnitude of [defendant's] operations and sales in Washington reflects an undeniable presence in the state; it has held a license to do business there since 1940, has advertised in purely local publications since at least the 1950s, has engaged in local political activity to protect its market, and maintains a permanent office and workforce in the state.).

### B. **Venue is Appropriate in this District and Defendant Has Not Demonstrated That The Action Should be Transferred.**

A Court, when faced with a request to transfer venue, must consider the parties, the witnesses, and the interests of justice.  28 U.S.C. § 1404(a).  "[A] transfer will not be ordered simply to make it more convenient for the defendant." (Weil & Brown,

Case No. C-075242 PJH

6

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

1  California Practice Guide: Fed. Civil Procedure Before Trial, § 4:730.)  Instead,
2  Defendant "must make a strong showing of inconvenience to warrant upsetting the
3  plaintiff's choice of forum.  As part of this inquiry, the court should consider private and
4  public interest factors affecting the convenience of the forum." Decker Coal Co. v.
5  Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).  The Decker Court
6  private factors include the "relative ease of access to sources of proof; availability of
7  compulsory process for attendance of unwilling, and the cost of obtaining attendance of
8  willing, witnesses."[1]

9  In its Motion, Defendant states: "it is clear that all likely witnesses, parties and
10 relevant evidence are located in Southern California." (Motion, at 6.)  Again, the truth
11 of Defendant's assertion is far from clear.  The only third-party witnesses thus far
12 identified, Kaiser's Northern California employees, all are located in this district, and the
13 harm occurred here.  Of particular import, Mary Parks, Kaiser's senior legal counsel
14 and the person who informed Second Image of Defendant's invasion of Second
15 Image's systems, works in Alameda County.  (Fogwell Decl., ¶ 4.)  Additionally, the
16 Second Image employees who were working on Kaiser's class action prior to the
17 disruption caused by Defendant's invasion of Second Image's systems work in Second
18 Image offices in San Francisco and Sacramento.  (Id., ¶ 6.)  As for the documentary
19 evidence, the majority is and will be produced by the parties in electronic form,
20 meaning it can be transported from location to location on portable storage media with
21 little or no cost, regardless of where it originated.

22 Defendant's attempts to distinguish its Northern California operations as a "field

---

[1] Although Defendant does not discuss the "public factors" cited by the Decker Court, these factors again do not support transfer.  "Public factors include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986) citing, Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 and 241 n.6, 102 S.Ct. 252, 258 (1981) and Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 843 (1947).  Here, Defendant holds offices throughout the State, and the harm described in Second Image's Complaint was felt primarily in the Northern District.

Case No. C-075242 PJH                            7                    **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

representative office" (Motion at 4) are disingenuous, insofar as Defendant transacts its core business (issuing subpoenas and photocopying records) therefrom. The declaration by Defendant's president that "[t]he only activity by Ronsin Photocopy, Inc. in Northern California is serving of subpoenas and the copying of records on site for Northern California locations" (Declaration of Dennis Grant attached to Motion, ¶ 4), particularly where Defendant phoned Kaiser while Second Image was engaged in precisely these services for its client, actually supports venue in this District. Indeed, Defendant's declaration is factually inaccurate, claiming that the Northern California field representative office "functions only as drop location for field representatives" -- only days earlier, Defendant had posted on Craigslist an advertisement for a Bay Area field representative, stating: "A field representative's daily job duties include routing work orders, and copying legal documents throughout the Bay Area (primarily the city and peninsula) with our portable copy machines. You will be required to start and end your day in our Hayward office during the initial training period." (Kronenberger Decl., Exh. A.)

Equally unavailing are Defendant's purported concerns re costs. Defendant is a large company with over 100 employees, which has been in business for over twenty years. (Kronenberger Decl., Exh. C.) Moreover, any depositions of individuals of Defendant's Southern California employees would be at Second Image's, and not Defendant's, expense, as federal procedure requires that depositions be taken where individuals reside or work. (Weil & Brown, California Practice Guide: Fed. Civil Procedure Before Trial, § 11:1459). Indeed, the only additional expense to Defendant results from Defendant's apparent choice of Southern California, rather than Northern California, counsel. And Defendant can significantly alleviate that cost by requesting telephonic appearances as permitted by this Court's local rules.

In what smacks of grasping at straws, Defendant occasionally alludes to the supposed financial interests of individual defendant Ms. Sanchez. In fact, Ms. Sanchez

Case No. C-075242 PJH

8

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

1  is represented by insurance counsel in this District and therefore is not incurring any
2  additional costs due to Second Image's choice of venue.  (Kronenberger Decl., ¶ 2.)
3  Notably, Ms. Sanchez has filed an answer in this matter and has not moved to dismiss
4  or transfer.

5      This action was properly filed in the Northern District, and Defendant has
6  demonstrated no reason – save for the convenience of its counsel – that the action
7  should be transferred to the Central District.  Absent such reason, Defendant's motion
8  to transfer should be denied.

### C. Defendant Hacked into Second Image's Computer System in Violation of the CFAA.

    In arguing that Second Image has not alleged a violation of the Computer Fraud and Abuse Act, 18 U.S.C. §1030 (the "CFAA"), Defendant cites to no jurisprudence and ignores material allegations in the Complaint.  If Ronsin had examined the governing case law, and applied it to the facts set forth in the Complaint, Defendant would have seen a straightforward and factually sound cause of action against Defendant for violation of the CFAA.

    Ronsin suggests that because Defendant Sanchez freely gave Ronsin her password to Second Image's computer system, it had authority to hack into Second Image's entire computer system, including the medical files of persons unrelated to any legitimate business conducted by Defendant or Sanchez. (Motion at 7.)  The CFAA provides a civil action against a defendant who "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage."  Even if Defendant had obtained some sort of legitimate access to Second Image's website through its relationship with Sanchez, it exceeded this access when it hacked into other clients' accounts in other portions of Second Image's computer system so as to gain access to over 100 patient records on eight different occasions.  This is precisely what the Complaint has alleged. (Complaint at 6.)

Case No. C-075242 PJH      9      **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Judge Posner has noted that the difference between the terms "without authorization" and "exceeding authorized access" within the CFAA is "paper thin." See International Airport Centers, L.L.C. v. Citrin, 440 F.3d 418, 420 (7th Cir. 2006). Thus, in an analogous case, EF Cultural Travel BV v. Explorica, Inc., 274 F.3d 577, 582-84 (1st Cir. 2001), the court found that the defendant's use of a computer program to systematically collect prices from its competitor's public website, in order to undercut those prices, was without authorization within the meaning of the CFAA. See also International Airport Centers, 440 F.3d at 420-21 (finding that an employee engaged in unauthorized access of his employer's computer system when he caused the transmission of a harmful program to that computer system, despite his authorization to access that system for legitimate purposes). Here, while Defendant argues that it had legitimate access to Plaintiff's computer system via Sanchez's password, Defendant exceeded any legitimate access when it hacked into other portions of Plaintiff's computer systems and accessed individuals' medical records.

Similarly, Defendant's argument that Plaintiff has not included "specific allegations as to how Defendant 'defrauded' Plaintiff is inapposite. (Motion at 7.) Nowhere in Section (a)(5)(B) of the CFAA—the bases for civil actions—does the statute require that the defendant defrauded the Plaintiff. In U.S. V. Willis, 476 F.3d 1121, 1125 (10th Cir. 2007) the court said, "[w]e . . . conclude that §1030(a)(2)(C) only requires proof that the defendant intentionally accessed information from a protected computer; the section does not require proof of intent to defraud nor proof that the defendant knew the value of the information obtained." (addressing language of similar provision of CFAA). And in U.S. v. Sablan, 92 F.3d 865, 868 (9th Cir. 1996), the court found that the government need only prove that a defendant intentionally accessed a computer system, not that the defendant intended to cause the harm or loss. Accordingly, under the express language of the CFAA, Defendant's argument about the absence of fraud allegations is misplaced.

Finally, while Defendant argues that Plaintiff's Complaint contains no allegations that Defendant damaged Plaintiff's computer" (Motion at 8), Defendant overlooks the fact that in the Complaint, Plaintiff alleges that "[a]s a direct and proximate result of the actions, conduct, and practices of Defendants' alleged above, Second Image has suffered, and will continue to suffer, damages and irreparable harm." (Complaint at 7.) This, by itself, is a sufficient allegation of damages under federal pleading requirements.

But even if Plaintiff had not alleged that "Defendant damaged Plaintiff's computer," as Defendant argues, damage to the plaintiff's computer is not a requirement under the CFAA. Rather, Plaintiff need only allege that it suffered "damage or loss by reason of a violation" of the CFAA. 18 U.S.C. §1030(g). The CFAA treats "loss" separately from "damage," and Defendant fails to address whether the Complaint alleges that Plaintiff suffered a loss as a result of Defendant's actions. See <u>I.M.S. Inquiry Management Systems, Ltd. v. Berkshire Information Systems, Inc.</u>, 307 F. Supp. 2d 521, 525 (S.D.N.Y. 2004). Loss is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. §1030(e)(11). The Complaint alleges Plaintiff suffered a loss under the CFAA as a result of Defendant's misconduct. See <u>Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.</u>, 119 F. Supp. 2d 1121, 1126-27 (W.D. Wash. 2000) (finding that plaintiff stated CFAA claim when it alleged loss in the form of corrective measures).

Because Defendant has failed to address the provisions of the CFAA, the relevant case law, and the specific language of the Complaint, its Motion to Dismiss is baseless.

**D. The Complaint Contains an Adequate Description of Defendant's False**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

**Statements Made to Pursue Plaintiff's Customers.**

Defendant's arguments regarding Plaintiff's Lanham Act claim ignore Plaintiff's allegations in the Complaint as well as federal pleading standards. Defendant argues that "nowhere in the complaint are the alleged statements made by Defendants about Plaintiff every [sic] stated." However, Defendant overlooks the fact that the Complaint states that Defendant:

> In addition to hacking into confidential files, [has], in sales demonstrations to existing and, on information and belief, prospective Second Image customers made false representations about the security of records hosted on Second Image's private website, so as to gain an unfair business advantage.

(Complaint at 6.) This is a sufficient allegation of a false statement in violation of the Lanham Act because it provides Defendant with notice of the basis of Plaintiff's claim.

While Defendant complains that the above-referenced allegation does not include an exact quotation of the false statements made by Defendant, there is no such requirement under the Lanham Act or under federal pleading standards. The Federal Rules of Civil Procedure require only a short and plain statement of the facts showing that the pleader is entitled to relief. To adopt Defendant's argument would preclude a plaintiff from seeking relief unless it happened to have recorded the false statement when it was made.

Because the false statements at issue here were not spoken to Plaintiff or to the public at large, but rather, to a small group of select customers, their exact wording was not available for Plaintiff to include in its Complaint. However, Plaintiff anticipates that discovery will flesh out the precise wording of these statements. The important thing at this stage of the litigation, however, is to provide Defendant with notice of the basis of Plaintiff's claim. Plaintiff's Complaint has done so.[2]

---

[2] Defendant's argument that its false statements did not occur in interstate commerce is insufficient to dismiss Plaintiff's Lanham Act Claim. As noted in the Complaint, Defendant made its false statements to at least Kaiser Permanente and Interinsurance Exchange of the Automobile Club. Both of these entities are organizations present in multiple states, which engage in interstate commerce. As also noted in the Complaint, on information and belief, Ronsin made its false statements about Plaintiff to several other entities, some of whom may also be multi-state entities. Both Ronsin and Plaintiff regularly use

Case No. C-075242 PJH
12
**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Courts have interpreted the Lanham Act to address false statements made by competitors at similar oral presentations. See <u>Coastal Abstract Service, Inc. v. First American Title Ins. Co.</u>, 173 F.3d 725, 734-35 (9th Cir. 1999) (finding that false statements made by one escrow agent to a mortgage company about another escrow agent were commercial promotions sufficient to support Lanham Act claim); <u>Avid Identification Systems, Inc. v. Schering-Plough Corp.</u>, No. CV-99-00170, 2002 WL 464714, *2-3 (9th Cir. March 25, 2002) (finding that district court erred in stating that statements made at oral proposals to third party potential customers were too vague to amount to false advertising). When the potential purchasers in the market are relatively limited in number, even a single promotional presentation to an individual purchaser may be enough to trigger the protections of the Lanham Act. See <u>Coastal Abstract Service</u>, 173 F.3d at 735. Accordingly, Defendant's false statements to entities such as Kaiser Permanente and Interinsurance Exchange of the Automobile Club are within the ambit of the Lanham Act.

Because Defendant simply ignores Plaintiff's allegation setting forth the nature of Defendant's false statement, Defendant's Motion is deficient, and must be denied.

## IV.

## **CONCLUSION**

For the foregoing reasons, Defendant Ronsin's Motion should be denied in its entirety.

DATED: November 28, 2007.    **KRONENBERGER BURGOYNE, LLP**

By: _____
Henry M. Burgoyne, III
Attorneys for Plaintiff
SECOND IMAGE, INC.

---

mechanisms of interstate commerce to carry out their business operations—e.g. maintenance of its services via an Internet website available to its customers throughout the United States. At this time, it is impossible to assess the full effect of Ronsin's statements on interstate commerce.

Case No. C-075242 PJH                    13            **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**